DEC 20 2024 PM2:51
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:24CR231(RNC)(MEG) |
| v. | VIOLATIONS: |
| JAMES BLOSE | 18 U.S.C. § 1344(2) (Bank Fraud)<br>18 U.S.C. § 1957 (Illegal Monetary Transaction) |

INFORMATION

The United States charges:

COUNT ONE
(Bank Fraud)

Background

At all times relevant to this Information:

1. The defendant JAMES BLOSE ("BLOSE") was a resident of Connecticut.

2. BLOSE was a licensed attorney who was an employee of, and performed legal services for, a federally insured financial institution, the identity of which is known to the United States, and which is referred to herein as "The Bank." The Bank was a financial institution that, throughout various structural changes and name changes was, at all points in time, insured by the Federal Deposit Insurance Corporation ("FDIC") and was engaged in, and its activities affected, interstate and foreign commerce.

3. Prior to his resignation from The Bank, BLOSE held the positions and titles of, among others, Executive Vice President, General Counsel and Corporate Secretary, and in those roles, BLOSE preformed legal services and handled, among other responsibilities, commercial loan closings, real estate closings, and other transactions for The Bank.

4.      BLOSE maintained, had authority over, and utilized certain bank accounts at The Bank into which funds were deposited and through which funds were moved, including, an attorney trust account ending in x-7052, entitled James P. Blose, Esq, Attorney Escrow Account - IOLA Loan Closing account; and an attorney trust account ending in x-9401, entitled James P Blose, Esq Attorney Trust Account - IOLA. Attorney trust accounts are often legally known as Interest on Lawyer Trust Accounts ("IOLTAs") or Interest on Lawyer Accounts ("IOLAs"), depending on the jurisdiction.

5.      BLOSE also controlled various entities and corresponding accounts, including Saddlebrook Acquisitions, LLC, with an address in Southport, Connecticut, for which BLOSE was the Principal and Agent; Tylaur, LLC, with an address in Southport, Connecticut, for which BLOSE was a Principal; Kiawah Ventures I, LLC; and Kiawah Ventures II, LLC.

## The Scheme

6.      Beginning from approximately 2013 and continuing until in or about February 2023, in the District of Connecticut and elsewhere, the defendant JAMES BLOSE, knowingly devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of, The Bank by means of materially false and fraudulent pretenses, representations, and promises.

## The Purpose of the Scheme

7.      The purpose of the scheme was for BLOSE to enrich himself by fraudulently diverting fees and expenses owed and paid to The Bank as part of the closing of certain loan and real estate transactions, and thereafter transferring the funds and utilizing the funds for his own personal use and benefit.

The Manner and Means of the Scheme

The manner and means by which BLOSE sought to accomplish and did accomplish the scheme included the following:

8. It was a part of the scheme that, in certain commercial loan transactions in which The Bank acted as lender, BLOSE used one of his IOLA accounts to receive certain closing fees and expenses. BLOSE would then divert to himself a portion of those expenses due to The Bank that were designated for legal or other similar fees, either by retaining the money in the IOLA account or moving it to another account or a third party for BLOSE's benefit.

9. It was further part of the scheme that, in certain real estate transactions in which The Bank was the seller, BLOSE used one of his IOLA accounts to receive money from the purchaser, disbursed some of those proceeds to the Bank and other third parties for legitimate expenses, but retained a portion of the proceeds that were due to The Bank.

10. It was further part of the scheme that, as with the commercial loan transactions, BLOSE would include legal and similar fees in the transaction but divert the proceeds to himself or to a third party for his benefit.

11. It was further part of the scheme that in many of those real estate transactions, BLOSE would conceal his theft of funds by falsifying The Bank's copy of the closing statement to hide the funds he retained. For example, BLOSE would: (i) falsely list certain credits to the purchaser on The Bank's copy of the closing statement, thereby reducing the amount The Bank believed it was owed; (ii) falsely inflate and/or falsify certain third party expenses such as funds held in escrow, in The Bank's copy of the closing statement, allowing him to keep the difference between what was paid to the third party and what was reported to The Bank; and (iii) falsely

report certain deal-related expenses such as title transfer fees, UCC filing fees and local taxes on The Bank's closing statement as being owed by The Bank, when the purchaser covered the expenses, allowing BLOSE to retain those amounts.

12. It was further part of the scheme that, in some of those real estate transactions, BLOSE would cause money to be sent to a law firm associated with a relative of BLOSE, and then falsify The Bank's version of the closing statement to conceal the payment.

13. It was further part of the scheme that BLOSE, in total, fraudulently obtained approximately $7.4 million from The Bank, most of which was transferred through his attorney trust accounts, to his personal accounts and for his personal use.

Execution of the Scheme

14. From on or about March 29, 2021 to on or about March 31, 2021, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice, in connection with The Bank's sale of 65 Nugent Street in Southampton, New York, BLOSE caused the buyer to deposit, via two deposits, a total of $1,981,120.96 into his IOLA account ending in x-9401 and then caused only $1,923,120.96 of the funds to be transferred to The Bank to cover actual costs and fees, resulting in $58,000 remaining in his IOLA account ending in x-9401 as proceeds of the scheme. BLOSE then falsified The Bank's version of the closing statement to hide his theft.

All in violation of Title 18, United States Code, Section 1344(2).

COUNT TWO
(Money Laundering – Engaging in Illegal Monetary Transaction)

15. Paragraphs 1 through 14 are incorporated by reference.

16. On or about April 23, 2021, in the District of Connecticut and elsewhere, BLOSE did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, involving a financial institution engaged in, and the activities of which affect, interstate commerce, such property having been derived from a specified unlawful activity, bank fraud in violation of Title 18, United States Code, Section 1344, that is, BLOSE caused the issuance of check #1653 in the amount of $21,000 drawn on his IOLA account ending in x-9401, containing proceeds of the bank fraud described above, and which check was negotiated by the Connecticut-based payee company at a bank branch located in Connecticut.

All in violation of Title 18, United States Code, Sections 1957 and 2.

UNITED STATES OF AMERICA

_____
MARC H. SILVERMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

_____
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

_____
ROSS WEINGARTEN
ASSISTANT UNITED STATES ATTORNEY